TONOPAH EXTENSION MINING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28812. Promulgated May 29, 1930.

*Brooks Fullerton, Esq.*, for the respondent.

OPINION.

ARUNDELL: The respondent determined deficiencies in income and profits taxes as follows:

Fiscal year ended March 31, 1919_____ $61, 535. 25
Fiscal year ended March 31, 1920_____ 12, 087. 51
Fiscal year ended March 31, 1921_____ 4, 042. 50

Petitioner contests only the deficiencies asserted for the years ended March 31, 1919 and 1920, alleging that the respondent erred in determining the amount of net income attributable to the mining of gold. No appearance was entered on behalf of the petitioner at the hearing and on motion of the respondent the proceeding was submitted on the pleadings.

It appears that there is no dispute as to the amount of petitioner's net income or its invested capital. The only point in controversy is the determination of the portion of net income from the mining of gold which is exempted from profits taxes under section 304 (c) of the Revenue Act of 1918.

From the pleadings it appears that petitioner is engaged in the business of mining and treating an ore containing gold and silver, intimately associated and mixed in the ore, and extracting and selling the metal recovered. The two metals go through practically the identical process from the moment the pick is stuck in the ground to mine the ore until they come out of the mill and refinery of the petitioner as gold and silver bullion ready for sale and shipment.

Section 304 (c) of the Revenue Act of 1918 provides:

In case of any corporation engaged in the mining of gold the portion of the net income derived from the mining of gold shall be exempt from the tax imposed by this title, and the tax on the remaining portion of the net income shall be the proportion of a tax computed without the benefit of this subdivision which such remaining portion of the net income bears to the entire net income.

The respondent in articles 715 and 752 of Regulations 45 has outlined the method of determination of the net income derived from the mining of gold in cases like the present. Article 752 is merely a paraphrase of section 304 (c) of the Act. Article 715 provides as follows:

Whenever it is necessary to determine the portion of the net income derived from or attributable to a particular source, the corporation shall allocate to the gross income derived from such source, and to the gross income derived from each other source, the expenses, losses, and other deductions properly appertaining thereto, and shall apply any general expenses, losses, and deductions (which can not properly be otherwise apportioned) ratably to the gross income from all sources. The gross income derived from a particular source, less the deductions properly appertaining thereto and less its proportion of any general deductions, shall be the net income derived from such source. * * *

Petitioner contends that the same cost of production per unit, including mining, transportation, milling, etc., attaches to each of the two metals it produces, and therefore it is entitled to have the amount of net income attributable to gold determined by deducting

1260.

from gross income an apportionment of costs based on the unit cost of the metals produced. In other words, petitioner's idea seems to be that if a given quantity of ore produces 90 ounces of silver and 10 ounces of gold, then 90 cents of each dollar of producing costs should be deducted from gross income from silver and 10 cents from gross income from gold. Under this method petitioner determines the total cost of production of both metals and divides this sum by the total production in ounces, thus obtaining the cost of production per ounce, which figure it applies to each metal in determining the cost deductible from the gross income realized from each.

The respondent, in determining the net income attributable to gold, arrived at a percentage based upon the ratio of petitioner's gross proceeds from the sale of its combined gold and silver production. In other words, the respondent made an apportionment of the cost of producing gold and silver upon the basis of the gross selling price of the metals. Using the illustration above, and assuming that silver is worth 50 cents per ounce and gold $20 per ounce, petitioner would realize $45 on the silver and $200 for the gold, or a total of $245. The respondent's method of determining the net income from gold in such case is to allocate 200/245 of the mining costs to the production of gold.

The respondent's method gives effect to the relation of producing costs to income. The petitioner's method is based on the relation of producing costs to the quantity produced and does not take income into account. As the statute is concerned with income, it seems to us that the respondent's method, in the absence of exact costs attributable to each metal, carries into effect the intent of the statute.

*Decision will be entered for the respondent.*